Case number 22-5487, Oklahoma et al. versus USA et al. Oral argument, 15 minutes for plaintiffs, 15 minutes to be shared by the defendants. Mr. Shelfer for the appellants. Good afternoon. Thank you, Your Honor, and may it please the Court. Lachlan Shelfer from Gibson Dunn on behalf of all plaintiffs. Consumers research is the first time that the Supreme Court has addressed the private non-delegation doctrine in any of our lifetimes, and it provides new clarity on exactly what it means for a private entity to be constitutionally subordinate to the government. At a minimum, the private party may not make policy. The government alone must have decision-making, sole decision-making authority, and the private party's actions can have only the legal effect that the government decides they should. They cannot go into effect without an agency's say-so. This is different, respectfully, than the test that the prior decision applied. The prior decisions analysis was at a much higher level of generality, considering generally as a practical matter whether the authority or the FTC was the principal decision-maker or the primary rulemaker, but consumers research makes clear now that the test is at a much more granular, formal level of analysis. The government must be the only rulemaker, the only decision-maker, and this can be really clearly seen with regard to the civil enforcement scheme. The authority has the exclusive power to enforce the act in federal court. Defendants have not pointed to any statute in history that deprives the government of the power to enforce a federal law and puts that power entirely in the hands of a private party. It's the exact opposite of the Maloney Act, for instance, where the SEC has the exclusive enforcement power, and this violates consumers research because Congress has conferred governmental power on a private party. Now the prior decision hypothesized that the FTC could undertake rulemaking in an effort to claw back some modicum of oversight, but there are three... Could you step back on your point about the Maloney Act and the... you're saying, just to make sure I'm following this, the SROs have no role in enforcement? Is that your theory? The SROs have no power to civilly enforce the Maloney Act in federal court. Okay, so let's just try to hear our questions as opposed to, you know, a fencing match. So I just want to make sure we're all on the same page as to what's going on. Are you just trying to make the point that the horse racing authority can file a lawsuit in federal court and the SROs can't? Is that the point you're trying to make? But I'm trying to figure out, if you're gonna push hard on the enforcement, which is great, it's only gonna speak to us if you're acknowledging the ways in which the SROs and the Maloney Act are similar, and then of course you're free to say why they're different. But you're starting as if there's absolutely no connection to these two, and that surprises me a little. Oh, I don't mean to do that, Your Honor. The Maloney Act in our opinion demonstrates why the HISA Act is unconstitutional. There's stark differences. Do the SROs have any enforcement authority? Do they have any role at all in enforcing the securities laws? So they have some investigative powers, but let me focus on the things they lack that the authority has here. So the first one is the power to enforce the statute in federal court. Why is that a bad thing? That seems like a good thing. Federal courts are trusted. It's life tenure judges. Why isn't that, you know, whatever, making lemons out of lemonade? That's a positive that they have to go to federal court to enforce. I would respectfully disagree with that, Your Honor. Buckley v. Vallejo and other cases have explained that the power to enforce federal law is the the core province of the federal government. And cases like Heckler v. Cheney explain that all of the myriad litigation choices that go into enforcement enforcement litigation are the sole province of the executive branch. So what the act does is it flips that on its head and it deprives the federal government of the power to enforce federal law and puts that entirely in the hands of the private authority. But everything that is done in the enforcement action is reviewable by the agency, by the FTC. No, not in the enforcement action. The FTC has no oversight over the enforcement action. When you say that broad statement, what you're narrowly meaning is if they decide not to enforce or if they make some discretionary, but if they actually enforce the act, impose sanctions, that's reviewable, right? I think, Your Honor, may be referring to the in-house enforcement authority to apply fines, for instance, in an in-house before an ALJ that then gets an appeal eventually up to the FTC. Yeah, and I'm also saying is to the horse racing authority that's true, that the FTC reviews. Right, the FTC, at the end of the day, reviews all of those civil enforcement actions that take place within the in-house. I'm starting with the starkest example, which is the authority's exclusive power to bring enforcement actions in federal court, over which the FTC has zero oversight. The federal government as a whole has zero oversight. But you mean that, oversight, not as to an actually successful enforcement action. No, so if the authority were to bring an enforcement action against a regulated party in federal court seeking an injunction, for instance, against a future action, the FTC has no role to play whatsoever in that. What if they obtain a sanction? You mean, so if they obtain a sanction in an internal agency review, then that could be appealed up to the FTC. But the authority's power is in no way limited to that. The authority's gives it broad power to bring these federal enforcement actions. So you're saying they can bring a sanction action internally and in federal court, one's reviewed by the FTC and the other's not? Well, I don't want to suggest that the civil enforcement power is limited to enforcing a sanction. It's also... I'm trying to be concrete, is what I'm trying to do. Sure, no, I want to get as precise as possible. Absolutely, Your Honor. I'm focusing on the starkest example, which is that in the absence of any administrative proceeding at all, the authority has the power to preemptively go to federal court to seek, say, an injunction against what it fears might happen in the future, what a regulated party might do in the future. That is, that federal enforcement action in federal court, the FTC has no, no power over that whatsoever. It has no role to in the least. But this is only the starkest example. There are other... Can I just put one thing? This is slightly unfair because it wasn't brief, but I... So if you want, you can circle back with a letter brief, but you might have the answer. I just want to make sure I'm understanding this, that in 15 U.S.C. 3054D, it basically says you kind of have to waive your rights to participate. So it says, you know, quote, as a condition of participating in covered races and the care, ownership, treatment and training of covered horses, you've got to agree to submit to the rules. Now, I realize this hasn't been argued, but I'm just trying to figure out what that means. Because broadly interpreted, that would suggest, you know, if you decide to participate, you waive your rights to rulemaking authority and enforcement actions. But if you don't, if you're not familiar with it, no worries. Well, I mean, no, I would welcome the opportunity to have post-argument letter briefs as well. But I would just note that a few things. First of all, this doesn't speak at all to enforcement actions. Well, that's not clear to me. It's pretty broad. Well, as a condition of participating in covered races and, you know, fairness to these horses, here are the rules. Right. In accordance with rules promulgated by the authority that there are no rules regarding the civil enforcement authority and, you know, shall register. I think I would also say that the the waiver of one's constitutional rights needs to be pretty explicit and shall I would I would suggest that shall register is not that one might have. But I would also welcome the opportunity to submit a letter brief on that point. OK, so back to enforcement, what's your take on the facial as applied issue? And just to be concrete, two thoughts. One, I tend to think of enforcement actions as quintessentially as applied challenges. So that that's just I suppose I wouldn't call it a bias, but that's my my instinct is how they work. But why wouldn't this kind of straightforward enforcement action, you know, so it's a horse cropping issue for whatever reason. The authority says no more than 10 in a race. The race is filmed, there's clearly 15, there's just there's no discovery, there's no subpoenas, there's no investigation. It's purely a function of what's the sanction for five more crops than allowed. It's very hard for me to understand how these arguments you're making would be implicated by that situation. And, you know, for sake of argument, it's not a federal court action. It's just like FINRA, it's all in-house. Aren't there clearly as applied settings where these structural arguments don't apply? I would respectfully disagree with that, Your Honor, I would say that the the facial as applied distinction doesn't really make a lot of sense in these kinds of challenges to the structure of a regulated party. And it's kind of just tell me what was wrong with my example. What what which what part of your argument about private non-delegation is violated? But that concrete example of someone who crops the horse more than five times, no one debates it, the only question is sanction. And of course, the sanction decision is reviewable if it's in-house. Well, so I'm a little unclear. I want to address the facial versus as applied distinction. I'm trying to see if you agree that that application is constitutional. I see. Yes. So you can you can say it's constitutional, but it doesn't matter because facial as applied doesn't apply to structural challenges. That can be your backup argument. For you, I want to just get your agreement that there are applications of the that would not implicate your arguments. No, your honor, so I would I would submit that the the entire thing is unconstitutional, and that's the whole point. It's the same reason that these challenges are are ripe. Right. In cases like free enterprise fund or Metropolitan Washington Airports Authority, what the court makes clear is that the challenge is not to a particular exercise of power. The challenge is to where the power is lodged. And so there doesn't need to be any civil enforcement at all for there still to be a violation, because in the words of the airport's case, the regulated parties have to act in the shadow of this unconstitutional regulator. And they have the sort of Damocles hanging over them. Every act that they take may finish the point. Your honor, I suspect we'll have more than enough questions. So just keep going. Sure. Yeah, no, we can keep going as long as you your honors would like. So so that's the point of of a free enterprise challenge or a Metropolitan Washington Airports Authority challenge or then Judge Kavanaugh's state national bank opinion, the CFPB. The whole point is that these agencies are exercising power, even if there's no particular exercise, they hold the power. The power is lodged in an in an entity that should not have that governmental power and the very threat. If that's your take, that must prove that you think the Maloney acts invalid. No, your honor, that the Maloney act. No, no, no. Just hear me. Hear why I'm saying it. I don't want to do a mix and match. I want to stay on the plane you are on. And your theory is that if you have private entities, anything, even something with no discretion, even something fully reviewable by the agency, that is a defect that permeates every application of the statute. That is exactly what a facial challenge means. So, for example, if you choose to allegate benefits solely on the religious status of the beneficiary, that is, there is no application that can possibly be valid under that theory. So you always it's the theory that relates the facial as applied. It's true. You can have a theory here that is facial. The theory would be never allow a private entity to have any role in enforcement rulemaking, whether reviewable or not. That's a theory that cuts across every application. But that is not your main theory, because your main theory is not to say the Maloney Act is invalid. Right. That is to focus on the problems that distinguish it from the Maloney Act, the federal enforcement action. So that's you can either answer the question or not, but that's the question. OK, let me let me do my best here, your honor. So, first of all, we certainly do not take the position that that any time a private entity has any type of role in in a regulatory scheme, that that would violate the private non-delegation doctrine. I think consumers research makes clear that that's not the point. That was not the test that consumers. So in my example of a legitimate application of the statute, there's no fact finding. There's no investigation. The parties agree there were too many crops of this horse in this race sanctioned internally, reviewable by the FTC. Why is that invalid, that application? So I don't think that that application would cause problems, but the point. So why why doesn't that then lead to the next point, that if there are applications that are not invalid under your theory, it can't be facially invalid? So I think the distinction between our positions right now is based on whether when you look at a statute, you look at each power or you look at all the powers. So if an agency or a private authority has 10 powers, if any one of them might have a constitutional application, then all 10 would be constitutional. That would not be our position. That would be that would be a misapplication. We would we would submit of a facial or as applied distinction. I think you can go power by power and say this power is valid. This power is not valid. And I think comparing it to FINRA helps to draw that out and make it very clear in FINRA under the Maloney Act, the SEC has the exclusive subpoena power. The SEC has the exclusive power to bring civil enforcement actions in federal court. So there are so you would look at each power individually. And just because there is one power that the authority has been granted. All right. I think this is a very, very fair point. And that is why I would not say this facial challenge fails because the rulemaking is not problematic. Right. You've correctly focused on enforcement. I think that's your strongest argument. I think rulemaking is going to be very difficult after FCC. And of course, all the circuits have agreed. I'm not saying because rulemaking is valid, the facial challenges you lose. But your second argument is enforcement. That is the way you chose to generalize. And that means you've got to take the burden, you know, you've got to take the burden with that approach. And the burden is you've got to show all the enforcements, you know, are invalid under private non-delegation principles. So that's that's that's why my example was the example. It had nothing to do with rulemaking. But you have to take that on unless you're going to say, you know, no, no, no. Go back to my original complaint. My original complaints broke it all down. I had a facial challenge to the enforcement authority in federal court. I had a facial challenge to the subpoena power. I don't think that's what your complaint said. Right. Well, I would respectfully disagree with this way of parsing out a brief. We know it's not the brief. It's your argument. And your complaint, it's your complaint, it's not even the brief, it's the complaint. We would respectfully disagree. I think we look at we talk about each of the powers, we say why they are unconstitutional. We did the same in the briefing. State your level of generality for your enforcement argument. What is the level of generality? What what is the level of generality for your facial enforcement argument? I would say there are individual challenges to each each power. So one power is the power to bring an enforcement action in federal court. One power is the power to subpoena. One power is the power to. And those things are in your complaint. If I go back to the complaint, is that how it's framed? Certainly, yes, we go through each one we speak about, we put special and we have always put special emphasis on the civil enforcement in federal court. Because because it's so stark because there's no other possible, you know, comparator out there. But I think the point is that this this sort of, you know, putting everything under umbrella in this in this way and sort of fudging the lines between what in the statute is very distinct, distinct powers that are separately given to the authority. I think that would that's exactly the sort of facial versus as applied application that is not not germane to these sorts of challenges. The whole point, even if you know, it can't be that a challenge such as ours, you know, succeeds if we only discussed civil enforcement in federal court, but fails because we also pointed to other powers that that kind of one one feature of this case. I mean, this question for all three of you that I I'm struggling with a little bit is just what private means in this setting. Like, I quite understand non-delegation principles. I think that's not that hard to get my head around. But, you know, Mr. Shelfer, you illustrate the point exactly. You're a private lawyer at Gibson Dunn and here you are standing on behalf of the state of Oklahoma. I don't think anyone's going to be upset about some private delegation, because I think what happened when you took this on is you agree to stand up your Oklahoma right now. None of the briefs really explore this, but I don't quite understand why the horse racing authority, why you can't essentially say the same thing. You know, you're making decisions as we speak about what the position of the state of Oklahoma is. And as soon as this argument's done, you're backing your capacity as private citizen. Why is it so different with the horse racing authority? I mean, I know there's a process to put people on the board. They're not just regular old citizens when they hold meetings. They're not just regular old citizens when they decide to enforce or propose rules. They're trying to carry out this law. I mean, this is, of course, historically the way most criminal law enforcement work. You deputized private citizens, you gave them the badge and they went and had all these authorities. So I'm trying to figure out. I mean, I understand the intuition behind it, but as the analogy to you illustrates, the intuition can go both ways. It happens all the time that governments rely on private entities to do things. So I'm trying to figure out just what is so bad about this when there's a process for appointing them. You're not making an appointment clause challenge here. So presumably these people are all appointed correctly, and I assume they have obligations to act for the government, not their private interests. So just help me realize why this is so bad. Sure, your honor, I have two responses to that. So the first one is that, for instance, my appearing on behalf of the states of Oklahoma and Louisiana and West Virginia, that's similar to the examples that the authorities brief gives of, for instance, private entities exercising the eminent domain power or participating in occasional police work, because in every one of those, that's like a government contractor in every one of those situations. The government is instructing a private party to carry out a specific task as an agent, giving them instructions. Here's how you do this. But there's always discretion. I mean, everybody knows there has to be discretion. Ultimately, you're exercising discretion every second. You don't have an earpiece. Well, I would return to the nature of delegations. There's going to be some discretion. I would return, your honor, to consumers research that the instruction that this court has received from the Supreme Court is that is that it should further consider its prior decision in light of consumers research. And as I noted at the outset, consumers research laid out certain principles that that a much more formal level of analysis than than sort of weighing both sides or a practical functional analysis. It said, can the private consumers research? And of course, we should press that it had zero to say about enforcement. Your only your only argument is about enforcement, and it's the one thing they said nothing about. That's right. That's right. That's that's a good point. The consumers research court did not address any of the administrators enforcement powers. But of course, private non-delegation doctrine is not limited to the rulemaking context. It's all executive powers. And so and there's no reason to think that there would be a different test in the two in the two places so that they may not make policy. The government alone must have decision making power and the private party's actions can have only the legal effect that the agency says they can. That is the exact reverse of what happens, for instance, with the civil enforcement power. Only the agent, the authority has the power to run those. The FTC is totally precluded from any participation in the civil enforcement context. This is unlike action as federal courts. Well, of course, but that that does not what that does not protect is that the discretion, the executive power has been transferred and there are myriad choices that the executive branch takes at all times that are the exclusive province of the executive branch policymaking decisions, their discretion, how how should they approach different things, whether in their prosecutorial discretion, they should undertake a enforcement action here or not. All of those are totally unreviewable by the FTC. And and again, the Maloney Act demonstrates why the why this act has or how this act has strayed so far from the constitutional requirements. I would also like to touch briefly on the rulemaking, though, your honor. I know that that well, why don't we do this? Why don't we why don't we let the mistakes and go for the government first? But we're going to be pretty flexible in time here. We were very fortunate to have three excellent lawyers and we're just trying to learn what we can from the case. So I'm not going to stop you from going back to that. But if it's all right, why don't we hear from the federal government and rebuttal? If you want to talk a little bit about rulemaking, that sounds good. And now you've alerted your your friends on the other side. So if it's all right, mistakes and you're here on behalf of the FTC, is that the way to think about it? Yes, I'm here for the FTC defendants. And I'll be splitting time with Mr. Shaw, who's here for the authority. OK, so go ahead. Thank you for being here. Thank you, your honor. Good afternoon. And may it please the court. Courtney Dixon for the FTC. This court correctly rejected all of the arguments that plaintiff raises today in its prior decision, and consumers research has only bolstered this court's prior reasoning. The Supreme Court and consumers research applied the same test. This court applied and it must have meant something. Grant vacate remand is not cert denial, much less affirm. So they wanted us to they did vacate. So there's something there. Well, I mean, you're the first. The Supreme Court did initially deny the cert petition in this case. There was rehearing granted after there was a circuit split created by the Fifth Circuit's outlier decision on enforcement. And then when the Supreme Court GBR, it did so in each of the cases when it had several conflicting cert petitions in front of it. So I think with respect to this case, again, the Supreme Court, I'm not going to read its mind, but I think with respect to what the lessons this court can take from consumers research is that consumers research applied Atkins, just as this court did. And the Supreme Court found no private non-delegation concern where the public agency could review and if needed, revise the private entity's actions and where there was no review of the administrator's initial decisions. The same is true with respect to Heise and the FTC under the horse racing statute. This court in its prior decision found no private non-delegation concern. So what about Mr. Shelford's point that one distinction with the Maloney Act is that the horse racing authority can do an enforcement action in federal court? You know, it's true. Rulemaking could affect that down the road. But today it seems to me he's correct. They can go right to federal court. FTC doesn't have to be consulted. Why why shouldn't we pause over that example? I mean, two responses to that. The first being the general rulemaking power this court recognized in its prior decision, even with respect to that power of the authority, the FTC could promulgate a rule and say you need to preclear that with us. And in fact, the authority has proposed a rule along those lines that the commission is currently considering. And so I think the general rulemaking power, at least in the context of this facial challenge, answers that question, just as this court recognized. And second, we are in the context of a facial challenge. And I think it's it's telling that my friend on the other side has recognized that there are at a minimum applications of the statute that do not present constitutional concern. They have directed nearly their entire argument to this one provision of the statute, 3054 J, to the extent that there are difficult questions or concerns presented by that provision. It could be addressed if that provision were ever invoked by the authority. It has not been. The authority has not used that provision to try and bring a civil enforcement action. There would be a ready case to address those questions in that action itself were it to arise. But it hasn't. And that provision is not a basis to strike down the statute on its face. That's what this court recognized. I think that was exactly correct. I'll also say, you know, since this court's decision, the Supreme Court has kind of revisited cases involving facial challenges in Rahimi and net choice. And it's reemphasized that the Supreme Court has made facial challenges hard to win. What is the what is the circle of claims properly thought of as the facial challenge world? Is it enforcement? Do we generalize off enforcement? Do we generalize off of the fact they can file this lawsuit in federal court? Do we generalize off of investigative power? Do you I mean, I realize you're getting this cold. So I realize it's not easy, but it's a fair point. We have to figure out what the universe of as applied challenges to consider within the facial challenge. I was coming in thinking it was enforcement was the concept, but maybe that's not fair to the states. I think that is fair, your honor. Each of the courts that have looked at this have looked at rulemaking and have looked at enforcement. And I think if you were to think about it, if the plaintiffs walked in and said, our challenge is only to this 30, 50, 4J, there would be all sorts of questions about standing rightness, questions about what that provision means. They're just not presented here. I think when you're here in this facial challenge and they're saying, strike down this entire statute as unconstitutional on its face when this provision has not been invoked against us, we have not been the subject of a specific enforcement action. I think, as you said, your honor, you look at the context of the statute as a whole. You ask, are there constitutional applications? My friend has admitted that there are. And that's clear from the face of the statute. So what this again, you may not have looked at this either, and you may want to file a letter brief as well. But this 30, 50, 4D that kind of says is a condition of participating. You got to agree to follow these rules. Now, I know it hasn't been litigated and I guess it could be an unconstitutional condition, all of this. But I'm curious what you think it means. Do you think that is a waiver? Do you think if you sign that you're you're kind of stuck and that's how it works? I mean, you know, I haven't I haven't thought about that question. We haven't briefed it and I don't want to get ahead of the position on any of those questions. Maybe one thing I'm missing about this that you can both think through is maybe it's irrelevant because. The states are obviously not horse racers, so so maybe maybe that's the problem with the point that the only people that waive are the horse racing folks and the states could still be claiming you're taking our authority and that allows them to bring the challenge. So anyway, sorry to distract, but I know I and I'll say I'll say a couple of other things. First, I mean, I think across these cases that have addressed these questions, I don't think that's necessary. I think from the test in Atkins, you ask whether the authority is subordinate to the FTC. That's clear from the face of the statute. And second, about the provision that your honor raises, I think it's reflecting that this is a self-regulatory scheme. It was modeled in the in the model of the SEC SRO scheme where you are if you want to participate in the securities industry, you join a self-regulatory organization. And as this court recognized in its prior decision and as the 8th Circuit recognized as well, when Congress amended the statute in material respects, it put the horse racing authority and the FTC on the same footing as SEC and the SROs that has been upheld consistently across cases. And that was the model that Congress was looking at. And so I think that provision reflects that to me. Do you know do you know why the horse racing authority gets this power to go to federal court, which doesn't exist in the SROs Securities Act setting? I mean, I'm trying to figure out if there's a difference between the two regulatory settings or if there's a reason why it does stand out in a world in which you're modeling off of the SROs. Why why this special power? I mean, it is a it is a distinction from the SEC SRO scheme. You know, we had acknowledged these schemes are not identical. I think for a facial challenge, they're identical. Well, I guess I was just trying to see if you had any explanation why they did this. So there's something about horse racing or whatever that made this a good idea. Or there's a lesson learned from the SRO experience that made this a good idea. Yeah, I'm not sure I can I can speak to that, your honor. But again, this provision hasn't been invoked. And so I think if there are future questions, those would all be litigated in the context of an appropriate case. Does it make it worse for your side that the FTC, at least currently, is thought of as an independent agency? I know you're honoring that's how this case has been litigated. I don't think consumers research speaks to that at all. And so that's because FCC wasn't an independent agency. I mean, this is Justice Kavanaugh's concurrence where he talks about how. You know, independent agencies, the status of an independent agency might affect the non-delegation inquiry is what he's writing only for himself. Obviously, there's the Humphrey executors case, which is an FTC case. So God only knows where that's going. But I'm just trying to figure out, you know, the world we have today is FTC's independent. And I guess I could see the argument that that makes this a little worse because whatever the horse racing authority does, it's actually not quite as traceable to the president. Right. Because the FTC is more independent. We haven't break that here. And I don't want to get out ahead of any of those other cases that are making their way through the courts. OK, if the court doesn't have any further questions, I'm happy to let Mr. Shaw address questions for the authority. OK, thank you very much, Ms. Dixon. We appreciate that. Mr. Shaw, and you're the horse racing authority. Yes, your honor, may it please the court, Pratik Shaw for the authority, defendants and FLEs. I'm happy, obviously, to address any questions, but I guess I would pick up where Ms. Dixon left off and where Mr. Shelfer focused, which is on that 3054J provision. And this case has never been litigated in the district court. The first time it was before this court on supplemental briefing. And now, again, back here as kind of distinct challenges to single provisions, it's always been litigated as to answer your question, Chief Judge Sutton, how many circles? Two big circles, right? The rulemaking circle and the enforcement circle. That's how it was litigated in the district court. That's how it was litigated when we had briefing an argument here a couple of years ago. That's how it was litigated in the supplemental briefing. That's how it was litigated in the rehearing petition that was filed. And that's how it was, quite frankly, litigated in the supplemental briefs that were just filed last month. And that's how it's been litigated in every other circuit. Those are the two big bubbles. And within that, they're bringing facial challenges, admittedly facial challenges to those sweeping two aspects of the act. And so the question is, this court properly framed it last time is, is it unconstitutional in all its applications? The only application that they've focused on is what Mr. Shelford calls the most extreme or most stark example. But that's not how you do facial challenges. If it had been litigated as just a challenge to 3454J, then, as Ms. Dixon said, there would be standing questions, brightness questions, severability questions, none of which have been briefed because that's not how the case has been litigated. That provision has never once been invoked since this act. Can I I was a little unfair to Mr. Shelford in letting him answer this question and I'll make up for that in rebuttal. But I think he was starting down the road of arguing. You have to be a little careful with this facial as applied idea when it comes to structural challenges. And I don't think I let him complete the thought. But I think I think he was starting to go down the road of saying, I'm not sure that distinction really applies here. And, you know, so in other words, the, you know, net choice, Rahimi, all these cases are classic individual rights cases. And the facial as applied distinction really has kind of grew up in that area. And I could see an argument on his side that I'm not sure that really works here for a quote, a structural non-delegation challenge. So just give you a chance to chat a little bit about that, if that question makes sense. Sure. That question does make sense. But I think where that comes in, the law, the law that has been built in that area goes to ripeness, standing and ripeness type concerns. Yes, I understand that if you are bringing a structural challenge like in a pre, really, the dichotomy goes to pre-enforcement and post-enforcement type challenges. Yes, it makes perfect sense then that there is a body of law that says if you are bringing a pre-enforcement structural challenge, then yes, you don't have to wait for the enforcement to happen because the constitutional problem that you're talking about is kind of hardwired into the statute. And so that sheds light on why you can bring a pre-enforcement challenge. And we haven't challenged their ability to bring this pre-enforcement facial challenge on a private non-delegation doctrine basis. Right. And so I think that's where that has salience. It does not have salience to say that suddenly, if you can just point to one application of the act that's unconstitutional, then the whole thing is unconstitutional, or it doesn't throw out the entire body of facial versus as-applied challenges. It just goes to that timing and threshold challenge type analysis. I'm not aware of any law that says you throw out the facial versus as-applied, and there's good reason for that, obviously, because we know in every single, in the thousands and thousands of applications of this act that have happened to date, this act has been on the floor for five years, it's been fully enforced for a few years now, both on the rulemaking and enforcement side. There's not a single invocation of the provision that he's focused on going into federal court. Instead, they are all done through the in-house disciplinary proceedings that are subject to two levels of de novo FTC review. They're subject, after the amendment, they're subject to plenary rulemaking guidance from the FTC can put whatever constraints there on it. In fact, the FTC, since that amendment, has added lots of constraints onto the authority's enforcement activities. There's a pending rulemaking now that would have been final, but for the shutdown, because the deadline was November 10th, but two of those are exactly the sorts of constraints that this court hypothesized in its panel opinion, that for this enforcement in federal court provision, that you would need to get pre-clearance from the FTC before the authority could do that. Give us a prediction. When might those go into effect if the inertia continues and the shutdown stops? Sure. That may be a better question for the FTC. I don't know what their internal processes are, but presumably my best guess, Your Honor, is that they'll consider the period of the shutdown as tolling the deadline. The deadline would have been November 10th, so I would think- Another 40 days. Another 40 days, I got it. 40 days after that. But I think what this court's point, and of course, that would make them subordinate, right? Even in an as-applied challenge, just as this court said, they're subordinate as a facial matter. Even in an as-applied challenge, it would be facial. But the point that this court made in its original opinion, which holds true, and it's exactly the point that Chief Judge Colleton in the Eighth Circuit adopted here is, no, the point is that the FTC has plenary power to do that, and so that means they are in the driver's seat. Now, whether they choose to promulgate that rule in 40 days or not doesn't change the fact that they can superintend it at every stage of the process if they so choose. And the question- How do you respond to Mr. Shelfer's argument that you can't fix a delegation problem by allowing the agency to pull back its authority? So hypothesizing a ridiculously broad delegation, day one of the agency's authority, it says, well, we're only going to do this in these three areas. I think we can agree that doesn't work. That doesn't work. Why does that argument not apply here? So here's the fundamental difference between that example and what's going on here. This isn't just a question of delegating a bunch of authority, like if you were saying in the public, non-delegation to an agency, and then the agency deciding not to exercise it. That's Whitman, right? That would be a problem. That doesn't solve your public non-delegation challenge. That's not what's going on here. Here it's given authority, and it's given plenary power to the agency to supervise it. Now, just as this court said the first time, whether that agency is a demanding taskmaster or a lenient taskmaster doesn't change the non-delegation inquiry from a subordination standpoint, because Congress has given the FTC all the power and tools to be either a demanding or a lenient taskmaster. That's up to the agency to decide how much of that power it's going to utilize and how closely it's going to scrutinize each and every action. That's, I think, a fundamental difference from a delegation in which you're saying, oh, well, the agency is going to just not exercise all the power. That can't solve a non-delegation problem. This is different. After the amendment, we know Congress has given the FTC all the power it could hope to subordinate the authority in every which way to Sunday. The only question is— What about the inherent discretion point that I think intuitively is troubling to the typical lawyer citizen that a private entity gets this discretion about whether to investigate, whether to charge. Isn't there something intuitively right about that, which I think is a feature of Mr. Shelfer's argument? Yeah, I think, look, understandably, people may have that intuition, but we have 85 years of law under the Maloney Act, which is directly on point on that. The Maloney Act allows FINRA—and you don't have to take my word for it. FINRA filed an amicus brief in this case before this court that embraces the similarities, doesn't draw any of the distinctions that Mr. Shelfer is doing. And what FINRA can do is—and it's done this for 85 years—it can investigate on its own. It can bring charges on its own. It can do everything on its own. The one distinction is it can't file in federal court. But if you put that aside, it is exercising, consistent with your hypothetical—or not hypothetical, but your question, Chief Judge Sutton—it's making all of those initial enforcement decisions and then subject to the back-end SEC review, just like the FTC does here, de novo review of any sanction that's issued. So while it may be counterintuitive, we now have examples, well-trodden examples under the Maloney Act that every court has upheld. The same thing here. And quite frankly, in consumers' research, the case that the Supreme Court just heard, while you correctly point out, it did not speak to enforcement. So a GVR to that portion of Mr. Shelfer's case shouldn't move the needle. But putting that aside, as we point out in our supplemental brief to you, Chief Judge Sutton, that universal service fund administrator, that private fund administrator, as the Supreme Court points out, does have enforcement authority. And this is at 2508 of the Supreme Court's opinion when it's describing the fund more broadly. It talks about how the commission has de novo review of any action it takes to an aggrieved party. And we cite in our supplemental brief a couple of those enforcement actions, and they're worth just taking a quick look at. And you'll see they're just—they're exactly the type of thing that FINRA does, and they're exactly the type of thing that the horse racing authority does. We cite two of them, Big Bend and Windstream. And there, what happens is the administrator looks at a participant in that fund, decides whether they're violating a commission agency rule, and then assesses penalties. And then what you see in those two decisions is the commission de novo reviews that, and in both of those, it affirmed it. It said, yes, the administrator correctly found a violation of commission rules, correctly assessed a penalty, and it affirmed it. So this is not a novel thing. This is in the Maloney Act. It's in the Horse Racing Act. It's in the Universal Service Fund Act. And the lesson the Supreme Court has said since Atkins and reaffirmed in consumers research and every court of appeals decision in between, except for the outlying Fifth Circuit decision, has said is, as long as the statutory regime enlists a private actor, but the agency has the ultimate say-so, and here it has the ultimate say-so in three different ways. One is none of the enforcement rules could have taken effect without commission approval. Two, on the back end, we know that has two layers of de novo review of any sanction. But three, after the amendment, we know that the FTC can come up with any other constraint it wants on the enforcement actions. I think, Mr. Shaw, I think we've been very helpful. Thank you for answering our questions. Let me just make sure no one has any other questions. So thank you very much, Mr. Shaw. And Mr. Shelfer, I'll give you your rebuttal. And if you need a little more time, I'll give you some latitude there. But why don't you start right off? Thank you, Your Honor. So a couple of quick points. First of all, in response to something Your Honor said, if you look at paragraph 150, of our amended complaint, you'll see very clearly the entire paragraph is dedicated to civil enforcement. And indeed, the scope of the challenge shouldn't rise or fall based on the decision on Roman headers, whether we organized things generally under rulemaking and enforcement. That wouldn't really make sense. So paragraph 150, we very specifically home in on the civil enforcement power. So I would like to agree with my friend, Mr. Shaw, on the standing ripeness point. As he pointed out, the facial as applied distinction, it's similar to the standing ripeness point. And the facial as applied distinction is not relevant in this context for the same reason that the typical ripeness concerns are also not relevant here. As I noted, I pointed out Free Enterprise Fund, Metropolitan Washington Airports Authority, then Judge Kavanaugh's opinion in State National Bank. The airport's case says it's the threat of power hanging over the regulated party like the sword of Damocles. That's why it's ripe. And it's for the same reason. It's why the facial as applied distinction is not as relevant. So the question is, is it possible for the authority to exercise its exclusive power to enforce the act in federal court in a constitutional way? And our submission is no, because the challenge is not to an exercise, a particular exercise of that power, but where that power is lodged. But you acknowledge there could be some constitutional enforcement actions. In federal court? So we're using the term. We're using the term enforcement, meaning the batch of powers that the authority has been handed. For the same reason I said before, giving a private entity. I mean, you're not challenging the Maloney Act. And so if we assume that's constitutional, the whole in-house regime is enforcement. Well, so once again, I just want to point to a couple of powers. So we talked about the civil enforcement power where it's the exact opposite under the Maloney Act. The subpoena power is another one where only the SEC has the subpoena power, whereas here only the private entity has it. So there are ways to, there are marked distinctions with the Maloney Act. Clearly, the Congress did not simply. Yeah, but some of them cut the other way. Some of them, I think in the Maloney Act, they're deemed approved if the SEC does nothing. Here the FTC has to act. The record in one is narrower than the record in the other is broader. So you got to take the bitter with the sweet. There are some differences. Some help your side. I think some hurt your side. So the deemed approved point that I think that's an important distinction. So deemed approved is simply a mechanism by which the federal government exercises its policy discretion as to whether to approve something. It can either do some that actively or it can do it with by doing nothing. But that in either case, that's just the way that the United States exercises its discretion. Well, I'm very familiar with this point and it works in the rulemaking process. Let me just say it's a lot easier to get Congress to do something by saying it goes into effect without their doing something than to say something happens with their having to do something filibuster and all. I think anyone who has been alive the last 40 days realizes that distinction. Absolutely, Your Honor. But again, these are practical, functional considerations. As we submit, consumers research did not have that kind of balancing test. It had a formal. It didn't look at how strongly, whether it was a rubber stamp or not. That was not relevant. It was specific, formal questions. Is it possible for the agency to take action that has legal effect without the agency say so? That is clearly the case here. Another way to think about what we've been... This will be your last point, if you don't mind. Go ahead. Okay. All right. So some of our colloquy today, I think, goes more naturally to the question of severability. Whether, for instance, Sub J is severable from the rest of the act. My friends on the other side has said just because Congress gave the authority and one unconstitutional power doesn't mean that the entire act is unconstitutional.  So I don't understand. What is your response if the FTC approves this proposal to say...  Thank you, Your Honor. Very important. Just wait. Okay. Let's get the question. Then you get to the answer. So the way it works, let's just hypothesize that the Horse Racing Authority's proposal. Okay. They're the ones limiting. The FTC agrees with this. I quite agree that is not Whitman. I mean, if you want to make a Whitman argument, you can. But no, it's not a Whitman argument. That proves the subordination. And they're allowed to say, we're just going to decide you can't do it without our approval. Wouldn't that be the end of that argument? I would respectfully disagree, Your Honor. Three reasons why.  First, it's not consistent with consumers research because it acknowledges that the authority is exercising governmental power and that the FTC has to affirmatively act in order to stop that exercise. It's the necessity of that statutory rewrite. That is not a solution to the problem. It's a symptom. And I mentioned before Arthrex again. I think Arthrex is the key case here where, again, it was an Appointments Clause case. That's similar. It's about somebody exercising governmental power that they shouldn't. And the government said, it's okay because we could jump in before there's a final decision. And the Supreme Court said, no, those are just machinations. They're not the solution. They're a problem. It's the fact that the there that unconstitutionally appointed people. That was the challenge. We're exercising the power. Same thing here. There's a problem. It has to be rectified. That's a symptom, not a solution. So that's the first problem. The second problem is the one that the Fifth Circuit and Judge Grunder identified, which is that it would violate the act because the act already separately divides governmental powers. It gives some to the authority. It gives some to the FTC. It's each within their scope of responsibilities. And regulations cannot subvert a statute. The statute. So you're just your theory is they don't have authority to approve this rule. My my position, which I just just please. Yes or no. Just yes or no. They have authority. I just want to understand. Yeah, so this preclearance, it is my position that the preclearance rule violates the act and therefore approving it. They do not. Nobody has the authority to no agency has the authority to prove a rule that violates a statute. The rule violates the statute is what I'm saying. It rewrites the third point. Your third point is sick. Thank you. So the third point is that even under a preclearance regime, the authority would still have the case in the first place and second to make all of the myriad litigation choices that are in the exclusive province of the executive branch. The only thing that the FTC could do would be to veto one. But that is by no means the full panoply of the civil enforcement power. Thank you, Your Honor. We respectfully ask you to to strike down the statute. Well, thanks. And not just 3054 J, apparently. All right. So thanks to all three of you for your excellent arguments. This has been a challenging case at every iteration, and I can't tell you how reassuring it is for the judges to have excellent lawyers. So we're really fortunate, both with your briefs and our arguments today and answering our questions. So we're really grateful. It makes our job not easy, but easier. So thank you very much. We appreciate it. The clerk, the case is submitted and the clerk may adjourn court.